Mrs Katherine Alfortish

VS

Elias Pailet

7850

Dinkelspiel, J

7350

Dinkelspiel. J.

* The substantial facts in this case, briefly stated, are
to the following effect.

Plaintiff bought from defendant a certain lot of ground
for the sum of $600.- $10. cash and the balance on the
installment plan of $1.35. per week. During a period of
about six years plaintiff paid to defendant $341. when
defendant sold the lot to another purchaser, claiming a
forfieture of $341. under the terms of his contract.

Defendant admits, that since plaintiff had defaulted, as
herein above alleged, he felt himself free to sell said
lot to another person.

Plaintiff alleged in her petition, that by the terms
of said contract, that the purchase price , as stipulated ,
should be paid in weekly installments of $1.25.; and it
was further stipulated, that if she should not make any
weekly payments for eight weeks, then, without default,
the contract became null and void, and the payments made
forfeited.

The defendant relies, in his answer, on his right of
forfeiture, and admits the allegations contained in plain-
tiff's petition.

The record shows that this case was regularly fixed
for trial from time to time and for many weeks in the
District Court. Beyond filing the contract of sale, on
terms as stipulated by plaintiff, nothing else was done.
On the final trial of the case, in the absence of defen-
dant's Counsel, there was before the Court the document
called an agreement to sell together with the testimony
of plaintiff.and the receipts that she paid from time
to time both to defendant and at times to his Attorney,
the full amount claimed by her to which there was no
denial.

60

It appears that the last payments made by plaintiff was made on November, 14th. 1916, and ~~on August, 1917 and~~ subsequently on August, 1917, she was notified by the Attorney of defendant she must increase the weekly payments to $2. per week or else forfeit all she had paid, giving her four weeks in which to comply with the terms in the letter.

Defendant claimed in his answer, and as set out in his brief and in argument, that plaintiff is not entitled to the return of the money paid by her under her contract, because she had collected certain revenues, the amount of which has never been set out much less proven, and because there remained an unpaid balance , under the contract, which had not been paid.

We gather from the supplemental brief and also the argument of Counsel for defendant, that he complains against the action of plaintiff's Counsel  for hav--ing prosecuted this case to final judgment without Counsel being present at the time, and he asks this Court, for that reason, to remand the case back to the lower Court in order that he might have an opportunity to properly present his evidence in that Court, in view of the fact that judgment was rendered against his client without his having an opportunity of presenting defendant's rights.

It has been frequently held, that in the Civil District Court for the Parish of Orleans, cases are regularly called and fixed for trial after answer filed. These fixings are posted, and it is a well established fact that Lawyers must, in order to protect their clients interests, see to these postings, prepare their cases and be ready for trial whenever same are called. This was followed in this case. Postings were had at regul -ar intervals, the case was fixed for trial several times, at times defendant's Counsel was present, but whether

the case was reached or not this record does not show. But finally it was reached in due course, and whether or not plaintiff's Counsel did or did not show that courtesy, which the latter insists upon, is not a matter of defence, but could be urged only before the tribunal which had the case in charge. It is admitted, in oral argument, that this was not done and no application was made to the Judge for a new trial until after the judgment had been signed and became final, and then this appeal was taken.

In so far as courtesies are concernd, it is not for us to determine what same should be. We only have the law and the evidence to look after and to decide in accordance therewith. There was no violation in any respect of the law, and we are stäsfied it would not have been permitted by the Judge, if there had been any. In fact, there is no complaint so far as the Judge is concerned. The only complaint being one of want of courtesy on the part of plaintiff's Counsel. With that matter we have no concern, and we donot decide for the reason there is nothing to decide.

An examination of the contract entered into between the parties convinces us, that no matter under what name it may be termed, it posesss all the elements of a sale as set out in our Civil Code, and id a sale in fact and is covered by all the laws regulating sales/

The Supreme Court of this State has had occasion to pass upon contracts of this character, and has held same to be sales, no matter whether the parties so intended or not and even though they may not be considerred contracts of sale. State Ex. Rel. Buckley vs. Whited & Wheless, 104 La. 125. Girault vs. Feucht, 117 La. 384. Rev. C. C. Art. 3439. Article 2561 of the Code also provides; "When the buyer does not pay the price, the seller may sue for a dissolution thereof". This course does not seem to have

62

been adopted in this case, however, the seller without having taken any proceedings whatsoever sold the property which was the subject of this contract to a third party, and it is only when the other party to the contract, the plaintiff in this case, has been dispossessed of her property through her vendor and sues to recover what she paid on account thereof, that he comes into Court and claims non-fulfillment of her obligation, under that contract, and seeks to recover for these breaches.

We have been unable to find any authorities giving defendant any such rights, nor has any been supplied us by him. Those supplied in the supplemental brief, in our opinion, have no application to this case, nor are we of opinion, that under the law governing sales of this character, one could take back the thing sold and at the same time withold what has been paid on account thereof.

Defendant also complains, that while plaintiff sues for the return of/ the amount of money which had been paid on account of this contract when she had never tendered to him the amount of balance due on same, the interest thereon, or even the amount of taxes paid on the property by him. Conceeding this to be true, it is equally true, that defendant has his remedy and could have asked for that relief, but he has failed to do so. The pleadings show no reconventional demand having been made by him for any of the things he now complains of, except for the first time in this Court, and not having prayed for that relief in the Court below, it is impossible for us, at this time, to grant this request.

The judgment of the District Court was in favor of plaintiff for the amount claimed by her. In our opinion said judgment is correct and is now affirmed.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be, and the same is hereby affirmed. Defendant to pay costs of both Courts.

—Judgment Affirmed—

MRS. ALFORTISH

VS                                      No. 7850

ELIAS PAILET

### CHARLES F. CLAIBORNE, JUDGE.

I concur in the opinion and decree herein upon the
additional ground that plaintiff has received no consideration
for the money she has paid the defendant. If the defendant
herein, after agreeing to sell the land to the plaintiff had
refused to deliver it, or if for any reason delivery had be-
come impossible, there is no question that he could not have
demanded the price of sale, because the consideration of the
sale would have been wanting. I cannot see the difference
between that condition of affairs and the condition existing
here when the vendor, who has received several payments there-
after, sells to another the land he had sold to the plaintiff,
and thus made the performance of the contract impossible on
his part. The same reason for which the vendor cannot demand
the price of sale in the first case, prevents him from keeping
the portion of the price he has received: want of consideration.
It would be manifestly unconscionable for him to retain both
the thing sold and the price paid. 2 La., 360: 15 La., 390.
But it is said that such is the letter of the bond. That may
be, but the law will not permit the execution of such a bond,
and strikes it with nullity for two reasons.

I. Article C. C., 1893 says:

"An obligation without a cause can have no effect".

Article 1896:

"By the cause of the contract in this section is
meant the consideration or motive for making it &c".

The majority of common law authorities recognize the
validity of the forfeiture clause in the contract under con-
sideration. 9 Am. & Eng. Enc. Law, 71l; 35 same, 704; 39 same, Cyc
1381 (2) 29 Am + Eng. Enc Law p684. 727
But these States do not have any statute similar to
this Article 1893 C. C.

17 Baudry-Lac p 492 & 560; 24 Laurent p 342 & 353; 43

Dalloz Inr. Gen. No. 1373, on the authority of a case from a
Court of Appeal in Orleans, Mandeville vs Pays, decided  in
August 14, 1845 and reported in Dalloz Jnris Gen., 1846, part
2, p 72, tell us that such a clause is valid.  But the reason-
ing in that case, is not convincing. *Besides the French law on prescription is not the same as ours —*

II.  But the claim of the defendant to appropriate the
amount paid by plaintiff is usurious.  The price due by plain-
tiff was $600; the amount paid by him from February 8, 1912 to
November 14, 1916, a term of four years and nine months, was
$341.00.  The highest conventional interest allowed by law
upon that sum $600 would have been at 8%, $228.00. The balance is
usury.  But we must not lose sight of the fact that at no time
did the plaintiff owe the defendant $600.00.  On February 8th,
1912, the defendant received $10 on acount; and in 1912, $60;
in 1913, $101 ; in 1914, $85; in 1915, $60; and in 1916, $35.

Conventional interest cannot exceed eight per cent .
C. C., 2924 (2895).

"If any person shall pay on any contract a higher
rate of interest than the above as discount or other-
wise, the same may be sued for and recovered within
12 months from the time of such payment", id

"The stipulation of usurious interest forfeits
the whole interest". 34 A., 893 (897); 11 A., 511. 37 a 766-787

The defendant's argument is that the amount paid by
plaintiff represented the damages agreed  upon for a violation
of the contract. The only contract violated by plaintiff was
her failure to pay $600 on the different dates mentioned in the
contract.  The law on this subject is correctly laid down in
Griffin vs His Crs. in 6 Rob., 220 as follows:

"If, then, any penalty or damages were agreed
on, it must necessarily have been entirely for the
purchaser's  default or delay to pay the money. There
is, in our law, a marked difference between the dam-
ages which may be stipulated for the breach of an
obligation to pay money, and an obligation to give
a thing or perform an act.  Where the object of a
contract is anything but the payment of money, the

65

parties may determine the sum that shall be paid as damages for its breach, and Courts of Justice will not interfere with such agreements; but, on the contrary, will lend their aid to carry them into effect. C. C., 1928 (1901) (1895); 1934 (1928) & 5. But it is otherwise , when the contract is to pay a sum of money. The law has provided, that no damages exceeding ten per cent on the amount that was to be paid, can be stipulated. Article 1929 (1935) of the Civil Code declares, that "the damages due for delay in the performance of an obligation to pay money, are called interest. The creditor is entitled to these damages without proving any loss; and whatever loss he may have suffered, he can recover no more". Article 2895 (2924) of the same Code, provides, that "interest is legal or conventional; if conventional, it cannot exceed ten per cent". Any contract, or agreement, therefore, into whatever shape it may be thrown, which stipulates for more than ten per cent damages, or interest, for the delay to pay money, is illegal. (Authorities.) If, in the present instance, the penalty was enforced, the purchaser would be made to pay, for the three years elapsed, thirty per cent over and above the interest of ten per cent, which has been running from the date of the protest. This penalty, or these damages, (the name is unimportant) would clearly be awarded for the inexecution of an obligation to pay money. As the law forbids that such damages shall exceed ten per cent per annum, on the amount of money which the debtor has bound himself to pay, the inferior Judge acted correctly, in our opinion, in refusing to carry such a stipulation into effect, and in allowing only legal interest, pursuant to Article 1933 of the Civil Code, (now 2563 (2531)".

"By no device or shift the wit of man can invent, can more interest be taken, or profit made than that which the law permits, on a loan of money". 9 R., 125; 3 La., 393; 4 R., 498; 6 R., 216; 12 R., 178; 1 A., 62; 5 A., 615; 11 A., 511, 638; 12 A., 20.

"There is no distinction as to whether interest be usurious or not, between the interest stipulated upon the price for which property is sold, and the interest which may be stipulated for the loan of money". 5 A., 615.

The penalty for usurious interest shall be the forfeiture of the entire interest. 34 A., 893 (897); 11 A., 638.

For these reasons, I think the forfeiture clause of the contract is illegal and of no effect.

"Forgive me my foul murder!
That cannot be; since I am still possessed
Of those objects for which I did the murder,
My crown, mine own ambition and my queen.
May one be pardoned, and retain the offence?"
Hamlet Act III Sc III Kings' Soliloquy

Oct 25–1920    X